Peckham, J.
 

 Defendant and plaintiffs’ intestate, his father, four months prior to his death, settled their accounts, and defendant was found to be indebted to intestate in the sum of $425, for which he gave his note at one year, with interest. Within a day or two after his death this note could not be found, and defendant refusing to pay, this suit was brought.
 

 The plaintiffs having proved its consideration, that the note had been given but could not be found, rested their case. The defendant then produced the note with his name torn off, and testified that he had it in his possession prior to his father’s death; that he never took the note from the drawer of his father, and he did not know of any third person owning or possessing the note; that he never paid it, or transferred or delivered to intestate any property, nor was he indebted to defendant since giving the note.
 

 The testimony of this witness was incompetent as to any personal dealings between himself and his father. (Code, § 399.) He was incompetent to prove, therefore, that he received the note from his father. Much of what he did testify to on this point was inadmissible if objected to; but the referee found simply that the possession of the note by the
 
 *554
 
 defendant was presumptive evidence that it had been discharged; and, further, as a matter of -law, the fact that the note had not been satisfied by payment, set-off, or the delivery of property, is not sufficient to reject the presumption that it had been discharged. How
 
 “
 
 discharged ” the referee has not found, when it has not been in fact paid or in any way satisfied. The witness was incompetent to testify that he received it from his father. If he could not testify to that directly, he was equally incompetent to prove it indirectly, by stating in substance that he received it from no one else, though he says it in an indirect manner.
 

 The question is then simply : Is the production of this note by the defendant, under the facts of this case, evidence of its discharge, when it is proved not to have been paid or satisfied? I think it is not. We have been referred by the defendant’s counsel to 1 Pothier on Obligations, 573, as precisely in point. He says that Boiseau holds that possession of the note affords a presumption of its payment, but if he allege a release he must prove it; for a release is a donation, and a donation ought not to be presumed. Pothier differs, and thinks it should be presumed, unless the creditor shows the contrary. But Pothier agrees with Boiseau,
 
 “
 
 that if the debtor were the general agent or clerk of creditor,
 
 hrni/ng access to his papers,
 
 possession alone might not be a sufficient presumption of payment or release—so if he was a neighbor, into whose house the effects of the creditor had been removed on account of a fire.”
 

 This latter proposition seems applicable to this case. Here the case shows without contradiction that the defendant, living at home with his father, had a key that fitted his father’s deslr, where this note was kept. See to the same effect,
 
 Kenney
 
 v.
 
 Pub. Ad.
 
 (2 Brad., 319). The two cases cited by the defendant’s counsel, of
 
 Beach
 
 v.
 
 Endress
 
 (51 id., 470), and
 
 Edwards
 
 v.
 
 Campbell
 
 (23 Barb., 423), were both cases of instruments delivered up as having been paid and to be canceled. The circumstances of the surrender in each case were proved. In the latter case the surrender of the note was
 
 *555
 
 made by the payee, eight days before her death, to a third person, to be delivered to the maker, saying “ he had boarded him, etc., and he ought to have it, for it would not be more than right for him to have it.” Though the plaintiff' had possession of the note at the trial, the Supreme Court held he was not entitled to recover, and reversed the judgment he had obtained.
 

 This gives no aid to this defence. It is clear that if I own a chattel, not a chose in action, to-day, and next week it is found in another’s possession, the law does not presume a legal transfer of the title to the possessor. But as against me, if title be claimed he must prove it. Why should any different rule prevail as to a promissory note
 
 %
 

 The reason would seem to be that these evidences of debt are so universally the subject of commerce, that title ordinarily or frequently passes from hand to hand by delivery merely. It is not for the reason that to hold otherwise would be to impute dishonesty, fraud or felony, to the claimant or holder. Because the same might with equal propriety be imputed to the possessor of another chattel, still the law will not presume him to be the owner, without affirmative proof on his part. But if any presumption of title or of payment prevail by mere possession, it is only where the possession is free from suspicion.
 

 It is not a defence to show that defendant, a member of the family of deceased, and hence having access to his papers, is found in possession of a note owned by deceased at or about the time of his decease. Here, in addition, it appears that defendant never paid for it or satisfied it in any manner. To establish such a rule would be dangerous. It leads into too great temptation. This rule would give as good title to the note, or security of a third person. There could be no conviction for stealing in such case under this rule.
 

 It has become a maxim in the law, that “
 
 nemo dona/re faeile presumitur?
 
 To sustain this judgment would reverse that maxim. There is nothing left to stand upon but a gift, and that the law does not presume. Irrespective of the pos
 
 *556
 
 session of the note, there is not a particle of evidence tending in the direction of this being a gift.
 

 The defendant (proved by his mother, that she asked testator within from three to seven days of his death, if he had given that note to the defendant. He said no, he had not yet, and he-added that “giving the note to John would be wronging the rest of his children.” This claimed presumption is not only not sustained by any proof, but it is shown that it would have been wrong, and that the alleged donor felt and knew it to be so. It seems to follow that it would be against law as well as justice to uphold that judgment.
 

 If this were claimed as a
 
 donatio mortis causa,
 
 then the rule is still more rigid that the clearest proof on the part of the claimant is required. It must be established beyond suspicion. So are all the authorities touching that subject. (
 
 Walter
 
 v.
 
 Hodge,
 
 2 Swanston R.,
 
 97;
 
 2 Kent, 444, 8
 
 ed.; Coutant
 
 v.
 
 Schuyler, 1
 
 Paige, 316.)
 

 The judgment should be reversed and a new trial granted, costs to abide event.
 

 All concur. Folger, J., absent.
 

 Judgment reversed